# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **PHYLLENE W.**, individually and as mother and next friend of M.W., a minor, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 5:13-CV-1596-CLS |
| **HUNTSVILLE CITY BOARD OF EDUCATION**, ) ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Phyllene W., filed this case on August 28, 2013, asserting claims as the mother and next friend of M.W., a minor, against the Huntsville, Alabama, Board of Education ("the Board"), pursuant to the Individuals With Disabilities Education Act, 20 U.S.C. §1400 *et seq.* ("IDEA"), and the Alabama Exceptional Child Education Act, Ala. Code § 16-39-1 *et seq.* Specifically, plaintiff appeals under IDEA from an administrative due process hearing decision.[1]

The case presently is before the court on plaintiff's motion for summary judgment.[2] The court held oral argument on that motion on November 21, 2014. Upon consideration of the motion, briefs, administrative record, and arguments of

---

[1] *See* doc. no. 1 (Complaint).

[2] Doc. no. 22.

counsel, the court concludes that plaintiff's motion should be denied, and the decision of the administrative hearing officer sustained.

## I.  APPLICABLE LAW AND STANDARDS FOR REVIEWING ADMINISTRATIVE DECISION

The statutorily defined purposes of IDEA are:

(1)   (A) *to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living*;

(B) to ensure that the rights of children with disabilities and parents of such children are protected; and

(C) to assist States, localities, educational service agencies, and Federal agencies to provide for the education of all children with disabilities;

(2) to assist States in the implementation of a statewide, comprehensive, coordinated, multidisciplinary, interagency system of early intervention services for infants and toddlers with disabilities and their families;

(3) to ensure that educators and parents have the necessary tools to improve educational results for children with disabilities by supporting system improvement activities; coordinated research and personnel preparation; coordinated technical assistance, dissemination, and support; and technology development and media services; and

(4) to assess, and ensure the effectiveness of, efforts to educate children with disabilities.

20 U.S.C. § 1400(d) (emphasis supplied).  *See also Cory D. ex rel. Diane D. v. Burke*

*County School District*, 285 F.3d 1294, 1298 (11th Cir. 2002) ("The fundamental objective of the IDEA is to empower disabled children to reach their fullest potential by providing a free education tailored to meet their individual needs.").

> A "child with a disability" is
>
> a child —
>
> (i) with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this chapter as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and
>
> (ii) who, by reason thereof, needs special education and related services.

20 U.S.C. § 1401(3)(A). Every child with a disability is guaranteed a "free appropriate public education" (FAPE), which means

> special education and related services that —
>
>> (A) have been provided at public expense, under public supervision and direction, and without charge;
>>
>> (B) meet the standards of the State educational agency;
>>
>> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
>>
>> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9).

"Special education" is defined as "specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability, including — (A) instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and (B) instruction in physical education." 20 U.S.C. § 1401(29). "Related services" include:

> transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

20 U.S.C. § 1401(26). Each disabled student receiving special education and related services receives an "Individualized Education Program" (IEP), which is "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with section 1414(d)" of IDEA. 20 U.S.C. § 1401(14).[3]

Any party who has a complaint with regard to a local education agency's provision of a FAPE to a disabled child may file a complaint with the local education

---

[3] Section 1414(d) sets forth detailed requirements of what topics should be addressed in a student's IEP.

agency or state education agency, and that party will be entitled to an impartial administrative due process hearing. *See* 20 U.S.C. §§ 1415(b)(6)(A) & 1415(f)(1)(A). "The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief." *Schaffer ex rel. Schaffer v. Weast* 546 U.S. 49, 62 (2005).

Any party aggrieved by the administrative decision of a due process hearing officer may file a civil action in the nature of an appeal in a United States District Court within 90 days. 20 U.S.C. § 1415(i)(2)(A) & (B). In such an action,

> the court —
>
> > (i) shall receive the records of the administrative proceedings;
> >
> > (ii) shall hear additional evidence at the request of a party; and
> >
> > (iii) basing its decision on the preponderance of the evidence,
> shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(C).

In considering the administrative record and any other evidence submitted, the district court does not apply the usual Rule 56 summary judgment standards. *Loren F. ex rel. Fisher v. Atlanta Independent School System*, 349 F.3d 1309, 1313 (11th Cir. 2003) ("[T]he usual F. R. Civ. P. 56 summary judgment principles do not apply in an IDEA case.") (alteration supplied). Instead,

> "summary judgment [in IDEA cases] has been deemed appropriate even when facts are in dispute, and is based on a preponderance of the evidence." *Beth B. v. Van Clay*, 282 F.3d 493, 496 n. 2 (7th Cir. 2002). That is why the district court's decision "is perhaps better described as judgment on the record." *Id.*; *see also Slama v. Indep. Sch. Dist. No. 2580*, 259 F. Supp. 2d 880, 882 (D. Minn. 2003) (On motion for judgment on the record in an IDEA suit, the district court "may make a decision on the merits, even if there exist, upon the stipulated [r]ecord, disputed issues of material fact") (citation omitted).

*Fisher,* 349 F.3d at 1313 (alterations in original).

The Eleventh Circuit has summarized the appropriate standard for a district court's review of an administrative hearing officer's IDEA decision as follows:

> Whether an educational program provided an adequate education under the Act "is a mixed question of law and fact subject to *de novo* review." *CP v. Leon County Sch. Bd. Fla.*, 483 F.3d 1151, 1155 (11th Cir. 2007) (citing *Sch. Bd. v. K.C.*, 285 F.3d 977, 982-83 (11th Cir. 2002)). "Specific findings of fact are reviewed for clear error." *Id.* (citing *K.C.*, 285 F.3d at 983). "To the extent that this issue involves the interpretation of a federal statute, it is a question of law which we review *de novo*." *Id.* (citing *Walker County Sch. Dist. v. Bennett ex rel. Bennett*, 203 F.3d 1293, 1295 (11th Cir. 2000)).

*Draper v. Atlanta Independent School System*, 518 F.3d 1275, 1284 (11th Cir. 2008). Within that framework, the district court "has discretion to determine the level of deference it will give to the ALJ's findings." *CP*, 483 F.3d at 1156 n.4 (citing *K.C.*, 285 F.3d at 983 (in turn citing *Board of Education of Hendrick Hudson Central School District, Westchester County v. Rowley*, 458 U.S. 176, 205 (1982); *Doe v. Alabama State Department of Education*, 915 F.2d 651, 657 n.3 (11th Cir. 1990))).

6

If the district court finds a violation of IDEA, it also has "'broad discretion'" to fashion an appropriate remedy. *Draper*, 518 F.3d at 1284 (quoting *School Committee of Burlington v. Department of Education*, 471 U.S. 359, 369 (1985)).

## II.  DISCUSSION

The Supreme Court dictated a two-part inquiry for courts evaluating whether a school district has provided a student with a FAPE:

> First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

*Rowley*, 458 U.S. at 206-07 (footnotes omitted).

A.      **Procedural Requirements (Evaluations)**

Plaintiff first asserts that the Board failed to comply with the procedural requirements of IDEA because it did not conduct comprehensive evaluations and re-evaluations of M.W.

A school board must "conduct a full and individual initial evaluation" before providing special education services to a child. 20 U.S.C. § 1414(a)(1)(A). The evaluation should be designed to determine whether the child has a "disability" as defined by the IDEA, and, the child's educational needs. 20 U.S.C. §

1414(a)(1)(C)(i).  A re-evaluation should be conducted "if the local educational agency determines that the educational or related services needs, including improved academic achievement and functional performance, of the child warrant a reevaluation; or . . . if the child's parents or teacher requests a reevaluation."  20 U.S.C. § 1414(a)(2)(A).  The re-evaluation should occur "not more frequently than once a year, unless the parent and the local educational agency agree otherwise; and . . . at least once every 3 years, unless the parent and the local educational agency agree that a reevaluation is unnecessary."  20 U.S.C. § 1414(a)(2)(B).

> Each evaluation and re-evaluation must
>
> use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information, including information provided by the parent, that may assist in determining —
>
> > (i) whether the child is a child with a disability; and
> >
> > (ii) the content of the child's individualized education program, including information related to enabling the child to be involved in and progress in the general education curriculum, or, for preschool children, to participate in appropriate activities.

20 U.S.C. § 1414(b)(2)(A).

> As part of an initial evaluation (if appropriate) and as part of any reevaluation under this section, the IEP Team and other qualified professionals, as appropriate, shall —
>
> (A) review existing evaluation data on the child, including—

>>(i) evaluations and information provided by the parents of the child;
>>
>>(ii) current classroom-based, local, or State assessments, and classroom-based observations; and
>>
>>(iii) observations by teachers and related services providers; and
>
>(B) on the basis of that review, and input from the child's parents, identify what additional data, if any, are needed to determine —
>
>>(i) whether the child is a child with a disability as defined in section 1401(3) of this title, and the educational needs of the child, or, in case of a reevaluation of a child, whether the child continues to have such a disability and such educational needs;
>>
>>(ii) the present levels of academic achievement and related developmental needs of the child;
>>
>>(iii) whether the child needs special education and related services, or in the case of a reevaluation of a child, whether the child continues to need special education and related services; and
>>
>>(iv) whether any additions or modifications to the special education and related services are needed to enable the child to meet the measurable annual goals set out in the individualized education program of the child and to participate, as appropriate, in the general education curriculum.

20 U.S.C. § 1414(c)(1). Finally,

>[i]f the IEP Team and other qualified professionals, as appropriate, determine that no additional data are needed to determine whether the child continues to be a child with a disability and to determine the child's educational needs, the local educational agency —

    (A) shall notify the child's parents of —

        (i) that determination and the reasons for the determination; and

        (ii) the right of such parents to request an assessment to determine whether the child continues to be a child with a disability and to determine the child's educational needs; and

    (B) shall not be required to conduct such an assessment unless requested to by the child's parents.

20 U.S.C. § 1414(c)(4) (alteration supplied).

Plaintiff asserts that the Board "had ample reason to suspect that M.W. needed further evaluations and/or additional or different special education and related services."[4] Specifically, she alleges that the Board was aware of M.W.'s results on hearing tests, her increased hearing loss and need for hearing aids, and her deficient academic performance despite average intelligence and receipt of learning disability services.

Plaintiff also asserts that the hearing officer improperly considered that she had not requested any additional evaluations. However, if the Board determines that no additional data is needed to determine the child's eligibility for special education services, it is not required to conduct an additional assessment *unless the parent requests it*. *See* 20 U.S.C. § 1414(c)(4).

---

[4] Doc. no. 23 (plaintiff's brief), at 28.

10

**B.     Provision of a FAPE**

Plaintiff also argues that the IEP's developed for M.W. in her 8th through 10th grade years failed to provide her with a FAPE.

**1.     Eighth Grade (2010-2011)**

The Hearing Officer found that plaintiff did not satisfy

> her burden to prove that this Child was denied [a] FAPE during the 2010-11 school year. Petitioner provided very little evidence about the 2010-2011 school year, other than the fact that she attended an IEP meeting in April 2010, at which it was determined that this Child was still qualified for services under the IDEA category of Specific Learning Disability, and that no one (including herself) expressed any opinion that any of the prior evaluations were no longer accurate or that reevaluation was needed in any area. And, it appears that Petitioner was afforded a full opportunity to participate in the IEP process, and that she agreed with all aspects of the IEP for that year. Petitioner makes a number of arguments about deficits in the IEP but the Hearing Officer does not find any of those arguments to be supported by the record or the law. As a result, the Hearing Officer does not find any denial of FAPE to this Child during the 2010-2011 school year.[5]

Plaintiff asserts that the Hearing Officer's decision is incorrect, and that the 2010-2011 IEP was insufficient because: (1) the Board failed to comprehensively evaluate M.W., despite knowing about her worsening hearing loss; (2) the IEP failed to adequately address her math and reading needs; (3) the IEP failed to offer language intervention services, audiology services, and remedial services; (4) M.W. made no

---

[5] Administrative Decision, at 44 (alteration supplied).

measurable progress in her reading and math goals.

### 2. Ninth Grade (2011-2012)

The Hearing Officer also found that plaintiff did not satisfy her burden of demonstrating that M.W. was denied a FAPE during the 2011-2012 year.[6] Specifically, he relied upon the testimony of M.W.'s teachers and STAR test results to conclude that M.W. "was proficient at grade level standards by the end of the 2011-2012 school year and that she mastered her 2011-2012 IEP goals."[7] That proficiency was significant because, "[p]ursuant to the 2011-2012 IEP, grades were one of the designated sources of data for determining mastery of IEP goals."[8]

Plaintiff asserts that: (1) the services provided to M.W. during the 2011-2012 year were too minimal and general to meet her educational needs, including her hearing loss, receptive and expressive language impairment, written expression deficits, reading deficits, and lack of basic math skills; (2) the teachers' opinions that M.W. was progressing and was proficient at current grade-level standards were not supported by the test scores and other evidence in the record; (3) it was improper for the Hearing Officer to rely upon M.W.'s good grades, because M.W. only earned those grades after receiving extensive accommodations; (4) the 2011-2012 IEP was

---

[6] *Id.* at 43-44.

[7] *Id.* at 43.

[8] *Id.* (alteration supplied).

not based on a comprehensive, current evaluation; (5) M.W. did not receive appropriate "transition services."[9]

### 3. Tenth Grade (2012-2013)

The Hearing Officer found that "the Board procedurally satisfied the requirements of 20 U.S.C. § 1414 in the development of the 2012-2013 IEP" because it received input from both plaintiff and M.W.'s classroom teachers, and it reviewed M.W.'s "most recent eligibility determination/reevaluation, curriculum based assessments, and information documented in [M.W.'s] prior IEP."[10] He also found that, because the IEP team's review of existing data for the 2012-2013 year did not indicate regression or the development of additional needs, no new or additional evaluations were necessary. The Hearing Officer also noted that plaintiff had not requested any new evaluations, and she did not express any other needs or concerns

---

[9] The IDEA regulations define the term "transition services" as

> a coordinated set of activities for a child with a disability that —
>
> (1) Is designed to be within a results-oriented process, that is focused on improving the academic and functional achievement of the child with a disability to facilitate the child's movement from school to post-school activities, including postsecondary education, vocational education, integrated employment (including supported employment), continuing and adult education, adult services, independent living, or community participation.

34 CFR § 300.43(a).

[10] Administrative Decision, at 37-38 (alteration supplied).

during the IEP meeting. The Hearing Officer acknowledged "that it is not up to the Parent to ask for evaluations," but he nonetheless emphasized that an IEP will satisfy IDEA "if the IEP team does not see any issue that would reasonably suggest that new evaluations were needed and the parent does not request any evaluations . . . ."[11]

The Hearing Officer next concluded that the goals set in the 2012-2013 IEP were sufficiently "measurable" because the IEP specified that M.W. should be expected to demonstrate proficiency at 70% of course of study content standards. He further found that the IEP contained appropriate transition goals, including written expression assistance. He noted M.W.'s lower STAR reading and math scores, but determined that those scores should not be relied upon too heavily, because the STAR assessments did not match up to the school's curriculum, and many higher-performing students had received low STAR scores. Instead, the Hearing Officer focused more heavily on claimant's classroom performance to determine whether she was meeting grade-level and IEP standards. Finally, the Hearing Officer considered that M.W. could have received the areas of supplemental instruction that her expert witness suggested if she had enrolled in a learning strategies class, but M.W. chose to take an elective class instead.[12]

---

[11] *Id.* at 38-39.
[12] *Id.* at 37-42.

Plaintiff challenges that decision on several grounds. She asserts that: (1) the Hearing Officer improperly placed the burden on plaintiff to request additional assessments; (2) the Board had ample reason to suspect that additional evaluations were needed because it knew about M.W.'s hearing loss and her under-performance in reading and math; (3) The IEP's academic goals were not sufficiently measurable because they were based on grades, teacher tests, and curriculum based assessments; (4) the "survey" used to measure M.W.'s transition goals did not actually provide enough information to measure those goals; (5) M.W.'s STAR results *are* relevant, because the Board was the party responsible for including the STAR results on M.W.'s IEP; and (6) M.W.'s decision not to enroll in the learning strategies class is not relevant because the class did not provide a research-based reading or math program, and because M.W. had not benefitted from being in the class in the past. Plaintiff also points out that the 2012-2013 IEP did not include any plan to increase M.W.'s reading and math skills, despite including an increase in reading comprehension as a goal, and it did not offer any language intervention services, audiology services, or remedial services. Finally, plaintiff asserts that, despite the deficiencies in M.W.'s academic performance, she was placed in the regular classroom 80-100% of the time.

## III. CONCLUSION AND ORDERS

After a careful review of the record, briefs, and arguments of counsel, the court concludes that plaintiff has failed to meet her burden of demonstrating that the Board denied M.W. a FAPE. Accordingly, plaintiff's motion for summary judgment is DENIED, and the decision of the administrative Hearing Officer is AFFIRMED.

Costs are taxed to plaintiff, and the Clerk is directed to close this file.

DONE this 10th day of December, 2014.

_____
United States District Judge